758 So.2d 86 (2000)
NOVA SOUTHEASTERN UNIVERSITY, INC., etc., Petitioner, Cross-Respondent,
v.
Bethany Jill GROSS, Respondent, Cross-Petitioner.
No. SC94079.
Supreme Court of Florida.
March 30, 2000.
Rehearing Denied May 15, 2000.
*87 John Beranek and Stephanie W. Redfearn of Ausley & McMullen, Tallahassee, Florida, and Theodore Deckert of Panza, Maurer, Maynard & Neel, P.A., Fort Lauderdale, Florida, for Petitioner, Cross-Respondent.
Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, Florida, and Tod Aronovitz of Aronovitz & Associates, P.A., Miami, Florida, for Respondent, Cross-Petitioner.
QUINCE, J.
We have for review a decision on the following question certified by the Fourth District Court of Appeal in Gross v. Family Services Agency, Inc., 716 So.2d 337 (Fla. 4th DCA 1998), to be of great public importance:

WHETHER A UNIVERSITY MAY BE FOUND LIABLE IN TORT WHERE IT ASSIGNS A STUDENT TO AN INTERNSHIP SITE WHICH IT KNOWS TO BE UNREASONABLY DANGEROUS BUT GIVES NO WARNING, OR INADEQUATE WARNING, TO THE STUDENT, AND THE STUDENT IS SUBSEQUENTLY INJURED WHILE PARTICIPATING IN THE INTERNSHIP?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve the Fourth District's decision.

Facts
The pertinent facts are taken from the Fourth District's opinion and are as follows:
Bethany Jill Gross, a twenty-three year old graduate student attending Nova Southeastern University, was criminally assaulted while leaving an off-campus internship site. Gross filed a negligence action against Nova based on Nova's alleged negligence in assigning her to perform an internship at a facility which Nova knew was unreasonably dangerous and presented an unreasonable risk of harm. The trial court granted summary judgment for Nova, finding that there was no duty....
The facts, as alleged in the sworn affidavits and other record evidence, and presented in the light most favorable to [Gross], the non-moving party, are briefly summarized as follows. [Gross] moved to Fort Lauderdale from North Carolina to study at Nova Southeastern University in the doctorate psychology program. As part of the curriculum, she was required to complete an eleven-month internship, called a "practicum." Nova provides each student with a listing of the approved practicum sites, complete with a description of the type of experience offered at each site. Each student selects six internships from the *88 list and is placed, by Nova, at one of the selected sites. [Gross] submitted her six selections and was assigned, by Nova, to Family Services Agency, Inc. ("FSA").
FSA is located about fifteen minutes away from Nova. One evening, when leaving FSA, [Gross] was accosted by a man in the parking lot. She had just started her car when he tapped on her window with a gun. Pointing the weapon at her head, the assailant had [Gross] roll down the window. [She] was subsequently abducted from the parking lot, robbed and sexually assaulted. There was evidence that prior to [Gross's] attack, Nova had been made aware of a number of other criminal incidents which had occurred at or near the FSA parking lot.
Gross, 716 So.2d at 338.[1]
The Fourth District reversed the trial court's summary judgment in favor of Nova, stating:
This case involves an adult student injured during an off-campus, but school related activity, i.e., a university-mandated internship program at a site specifically approved and suggested by the university. The relationship between Nova and Gross can be characterized in various ways, but it is essentially the relationship between an adult who pays a fee for services, the student, and the provider of those services, the private university. The service rendered is the provision of an educational experience designed to lead to a college degree. A student can certainly be said to be within the foreseeable zone of known risks engendered by the university when assigning such student to one of its mandatory and approved internship programs. See McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). We need not go so far as to impose a general duty of supervision, as is common in the school-minor student context, to find that Nova had a duty, in this limited context, to use ordinary care in providing educational services and programs to one of its adult students. The "special relationship" analysis is necessary in this case only because the injury was caused by the allegedly "foreseeable" acts of a third party.
Id. at 339.
Nova seeks discretionary review based on the question certified by the district court, and Gross seeks review of a portion of the district court's opinion which she interprets to mean that Nova's sole duty to her was a duty to warn. Nova argues the certified question should be answered in the negative. In addition Nova opines the trial court's summary judgment was proper for three reasons: (1) Nova did not owe Gross any duty because she was an adult and Nova did not have control over her actions; (2) Nova did not owe Gross a duty to warn her of the dangers because Gross had equivalent or superior knowledge of the dangers; and (3) even if Nova owed Gross a duty to warn her of the dangers associated with the parking lot at Family Services Agency, Inc. (FSA), the failure to warn did not cause her injury because FSA had already warned her. In her cross-petition, Gross argues the Fourth District defined the duty owed by Nova too narrowly. She opines the Fourth District's opinion may be narrowly interpreted as only requiring Nova to warn students, but that the proper duty owed by a university in this situation is a duty to protect or to make students safe from foreseeable, unreasonable dangers.

Nova's Petition
Nova argues it did not owe Gross a duty because she was an adult student, and therefore not within the ambit of a special relationship between a school and a minor student. The special relationship doctrine creates a duty between parties, which would not exist but for their relationship. Nova points out that in Rupp v. *89 Bryant, 417 So.2d 658 (Fla.1982), the Court stated:
The genesis of this supervisory duty is based on the school employee standing partially in place of the student's parents. Mandatory schooling has forced parents into relying on teachers to protect children during school activity. But our problem is complicated by the fact that the injury did not occur during the school day or on school premises. As such, we must define the scope of the school's and employee's duty to supervise.
Id. at 666 (emphasis added). Thus, Nova argues it is inappropriate for the Fourth District to find there is a special relationship between a university, where attendance is not mandatory, and an adult student because the university is not standing in loco parentis to an adult student. While the Fourth District discussed the special relationship doctrine, the court did not base Nova's duty to Gross on the type of relationship that exists between a minor child and public school officials.
Although Nova is correct that the school-minor student special relationship evolved from the in loco parentis doctrine, the district court recognized that any duty owed by Nova to Gross was not the same duty a school and its employees owe to a minor student. The district court further recognized a different relationship existed between the university and its adult students, a relationship which does not necessarily preclude the university from owing a duty to students assigned to mandatory and approved internship programs.[2] In Rupp, we said the extent of the duty a school owes to its students should be limited by the amount of control the school has over the student's conduct. Here, the practicums were a mandatory part of the curriculum that the students were required to complete in order to graduate. Nova also had the final say in assigning students to the locations where they were to do their practicums.
As Nova had control over the students' conduct by requiring them to do the practicum and by assigning them to a specific location, it also assumed the Hohfeldian correlative duty[3] of acting reasonably in making those assignments. In a case such as this one, where the university had knowledge that the internship location was unreasonably dangerous, it should be up to the jury to determine whether the university acted reasonably in assigning students to do internships at that location.
Moreover, the Fourth District's analysis is supported by fundamental principles of tort law. In Union Park Memorial Chapel v. Hutt, 670 So.2d 64, 66-67 (Fla.1996), we stated:
It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. See Slemp v. City of North Miami, 545 So.2d 256 (Fla.1989) (holding that even if city had no general duty to protect property owners from flooding due to natural causes, once city has undertaken to provide such protection, it assumes the responsibility to do so with reasonable care); Banfield v. Addington, 104 Fla. 661, 667, 140 So. 893, 896 (1932) (holding that one who undertakes to act is under an implied legal duty to act with reasonable care to ensure that the person or property of others will not be injured as a result of the undertaking); Kowkabany v. Home Depot, Inc., 606 So.2d 716, 721 (Fla. 1st DCA 1992) (holding that by undertaking to safely load landscaping timbers into vehicle, defendant owed duty of reasonable care to bicyclist who was struck by timbers protruding from *90 vehicle window); Garrison Retirement Home v. Hancock, 484 So.2d 1257, 1262 (Fla. 4th DCA 1985) (holding that retirement home that assumed and undertook care and supervision of retirement home resident owed duty to third party to exercise reasonable care in supervision of resident's activities). As this Court recognized over sixty years ago in Banfield v. Addington, "[i]n every situation where a man undertakes to act, ... he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured."
Id.; see also Pate v. Threlkel, 661 So.2d 278, 280 (Fla.1995)("A duty is thus established when the acts of a defendant in a particular case create a foreseeable zone of risk."). We find this fundamental principle of tort law is equally applicable in this case. There is no reason why a university may act without regard to the consequences of its actions while every other legal entity is charged with acting as a reasonably prudent person would in like or similar circumstances.
Nova also argues it did not owe Gross a duty because she knew FSA was in a dangerous location, and Nova's knowledge of the dangerous location was not superior to Gross's knowledge. While this is a correct statement of the law with regard to negligence actions based upon premises liability, this is not a premises liability case. Gross is suing Nova under a common law negligence theory based upon Nova assigning her to do her mandatory practicum at an unreasonably dangerous location. Issues of Gross's knowledge should be considered when determining the issues of breach of duty and proximate cause of her injury and in attributing proportional fault. However, it does not eliminate the university's duty to use reasonable care in assigning students to practicum locations.
Lastly, Nova argues even if it had a duty to warn Gross, the failure to warn her did not cause her injury. This argument is one that this Court need not reach but is better left to the trier of fact. In this case, the motion for summary judgment was based solely upon Nova's lack of duty. Therefore, this Court will not consider whether Nova's failure to warn Gross caused her injuries. See Ferber v. Orange Blossom Ctr., Inc., 388 So.2d 1074 (Fla. 5th DCA 1980)(issues of causation should be left to the jury).

Gross's Cross-Petition
Gross cross-petitions for review claiming the Fourth District's emphasis on Nova's failure to warn implies Nova only had a duty to warn. We do not read the Fourth District's opinion so narrowly. The court stated, "We need not go so far as to impose a general duty of supervision, as is common in the school-minor student context, to find that Nova had a duty, in this limited context, to use ordinary care in providing educational services and programs to one of its adult students." Gross, 716 So.2d at 339. We read this statement broadly as an indication that the duty, one of ordinary care under the circumstances, could include but is not necessarily limited to warning of the known dangers at this particular practicum site.
We do not make any specific findings as to what duty Nova owed Gross, other than to hold a jury should determine whether Nova acted reasonably in light of all of the circumstances surrounding the case. See Hutt, 670 So.2d at 66-67. As the court said in Silvers v. Associated Technical Institute, Inc., No. 93-4253, 1994 WL 879600 at *3 (Mass.Super.Ct. Oct. 12, 1994), "students... could reasonably expect that the school's placement office would make some effort to avoid placing [students] with an employer likely to harm them." This is the type of duty owed under the circumstances of this case.
Accordingly, we answer the certified question in the affirmative and approve the decision of the Fourth District.
It is so ordered.
*91 HARDING, C.J., and SHAW, WELLS, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] Gross settled her claim against Family Services Agency, Inc. for $900,000.
[2] See Robert D. Bickel & Peter F. Lake, The Emergence of New Paradigms in Student-University Relations: From "In Loco Parentis" to Bystander to Facilitator, 23 J.C. & U.L. 755 (1997).
[3] See Wesley Newcomb Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning, 23 Yale L.J. 16 (1913).