801 So.2d 193 (2001)
Susan Kent HINCKLEY, As Next Best Friend of Rebecca Hearthway, Appellant,
v.
PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS, AAA Wheelchair, Wagon Service, Inc., d/b/a Ambulette of the Palm Beaches, Henry Mesidor, an individual, and ADP Totalsource Services, Inc., Appellees.
No. 4D00-3770.
District Court of Appeal of Florida, Fourth District.
December 5, 2001.
Ann Porath, Wellington, for appellant.
Dawn S. Wynn, Assistant County Attorney, West Palm Beach, for appellee, Palm Beach County.
WARNER, J.
This appeal arises from the trial court's dismissal of a negligence complaint, alleging that the County had a duty to provide safe transportation to a developmentally disabled patron. The court dismissed the complaint on the ground that the County could not be liable where it had contracted with an independent contractor to provide the services. Because we conclude that, having undertaken to supply transportation to the disabled, the County's duty to provide safe transportation was non-delegable, we reverse.
*194 Appellant's daughter, Rebecca, is a developmentally disabled adult, having the mental age of an eight year old girl. As such, she qualifies for services provided by the Department of Children and Family Services under chapter 393, Florida Statutes. She relies on SpecTran for transportation to and from the Association of Retarded Citizens ("ARC") facility, where she receives services. SpecTran is a division of Palm Tran, Palm Beach County's county-wide bus service. According to the complaint, SpecTran provides transportation for mentally disabled individuals pursuant to chapter 393. Appellee Ambulette provides vans and drivers for SpecTran, as a "transportation partner" of the County.
Rebecca was picked up from her home on the morning of the incident by an Ambulette driver and transported to the ARC facility. During the ride, the driver sexually molested Rebecca, prompting appellant to file suit against the County, Ambulette, and the driver. She alleged that the County, in its provision of transportation services, had a special duty to the disabled, a particularly susceptible population of riders. The complaint also alleged that this duty was non-delegable and was breached by the County's failure to provide a safe environment for persons using its SpecTran services. Appellant also alleged causes of action for violation of the County's statutory duty under chapter 393 and breach of fiduciary duty.
The County moved to dismiss, admitting that it had the duty to provide transportation services pursuant to chapter 393, but alleging that Ambulette was an independent contractor for which it could not be liable. At the hearing, appellant's attorney objected to the characterization of Ambulette as an independent contractor because the complaint alleged they were partners, and no contract between the County and Ambulette had been produced. Nevertheless, the trial court granted the motion to dismiss, concluding, "[w]hen they [the County] decided to contract with somebody else, then they no longer have the duty to supervise the method used by SpecTran, the Ambulette people." Appellant appeals the order dismissing the County as a party defendant.
In Bell v. Indian River Memorial Hospital, 778 So.2d 1030, 1032 (Fla. 4th DCA 2001), this court summarized the appropriate standard by which an appellate court should review an order granting a motion to dismiss:
A motion to dismiss tests whether the plaintiff has stated a cause of action. Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal by the de novo standard of review. When determining the merits of a motion to dismiss, the trial court's consideration is limited to the four corners of the complaint, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party.
(Citations omitted). See also Rohatynsky v. Kalogiannis, 763 So.2d 1270, 1272 (Fla. 4th DCA 2000). It would be simple to reverse this case because the trial court went outside the four corners of the complaint in dismissing it on the ground that Ambulette was an independent contractor, where the complaint alleged a partnership arrangement between the County and Ambulette. However, the court also erred in determining under these facts that the County is relieved from liability because Ambulette was an independent contractor. Therefore, we also address the substantive issue raised.
"[F]or there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent *195 conduct." Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). Moreover, "in the absence of a special relationship between the individual and the governmental entity, a common law duty is not owed to the victim of a criminal offense, even though the offense might have been prevented." Sams v. Oelrich, 717 So.2d 1044, 1047 (Fla. 1st DCA 1998). An example of such a special relationship "is illustrated by the situation in which the police accept the responsibility to protect a particular person who has assisted them in the arrest or prosecution of criminal defendants and the individual is in danger due to that assistance." Everton v. Willard, 468 So.2d 936, 938 (Fla. 1985). In Gross v. Family Services Agency, Inc., 716 So.2d 337, 338 (Fla. 4th DCA 1998), approved sub nom., Nova Southeastern University, Inc. v. Gross, 758 So.2d 86 (Fla.2000), we explained:
Whether a duty arises in any particular context is resolved as a matter of law after weighing "the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." See Rupp v. Bryant, 417 So.2d 658, 667 (Fla.1982)(quoting W. Prosser, The Law of Torts § 53, at 325-26 (4th ed.1971)); Restatement (Second) of Torts §§ 314, 315 (1965). While a person or other entity generally has no duty to take precautions to protect another against criminal acts of third parties, see Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991), exceptions to this general rule have emerged, including the "special relationships" exception. See Restatement (Second) of Torts § 315 (1965). Among the recognized "special relationships" where defendants have been held liable for failure to exercise reasonable care when injuries have actually been inflicted by third parties are employer-employee; landlord-tenant; landowner-invitee; and school-minor student.
(Emphasis added) (footnotes omitted). The Restatement (Second) of Torts § 315, referred to in Gross, states:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
Where the issue has been considered, the relationship between a care provider and a mentally or physically disabled individual has been said to create a special relationship giving rise to a duty to control the conduct of a third person. See, e.g., Williams v. Tri-County Metro. Transp. Dist. of Or., 153 Or.App. 686, 958 P.2d 202, 206 (1998); Niece v. Elmview Group Home, 131 Wash.2d 39, 929 P.2d 420, 424 (1997); Caulfield v. Kitsap County, 108 Wash.App. 242, 29 P.3d 738, 745 (2001); Stauss ex rel Stauss v. Oconomowoc Residential Programs, Inc., 240 Wis.2d 265, 621 N.W.2d 917, 921 (App.2000), rev. denied, 242 Wis.2d 544, 629 N.W.2d 784 (2001). As noted in Caulfield, "the courts have found that the relationship involved an element of `entrustment'; i.e., one party was, in some way, entrusted with the wellbeing of the other party." 29 P.3d at 745.
Appellant alleged in the complaint that Rebecca was a mentally challenged person, susceptible to physical harm from persons who would commit assaults on her. As with minor children, developmentally disabled persons are a particularly vulnerable population, and when an agency or entity undertakes to provide services for them, it stands in a special relationship with them *196 with respect to the provision of those services just as those listed in Gross or more generally defined in the Restatement. Indeed, chapter 393 creates many state obligations and responsibilities towards its developmentally disabled citizens.
We have held that the existence of special relationships or public policy considerations may give rise to non-delegable duties. See Sammons v. Broward Bank, 599 So.2d 1018, 1020 (Fla. 4th DCA 1992). In Sammons, we determined that a bank had a non-delegable duty to repossess a vehicle only by peaceful means. 599 So.2d at 1020. Therefore, the bank could not avoid liability for a violation of that duty by hiring an independent contractor. See id. More similar to the present transaction, a common carrier cannot relieve itself from its primary duty to maintain safe accommodations for its passengers and their baggage by contracting with an independent contractor to perform its functions. See Johnson v. Fla., E. Coast Ry. Co., 66 Fla. 415, 63 So. 713, 715 (1913). Certainly, no one would disagree that a transporter's duty to provide safe carriage for some of society's most vulnerable citizens, the disabled, exceeds its duty to provide safe passage for someone's luggage. We therefore hold that when the County undertook to provide transportation services to appellant's developmentally disabled daughter, it created a special relationship with her and a duty to protect her from foreseeable harm. That duty is non-delegable. Therefore, the complaint stated a cause of action, irrespective of whether Ambulette was the County's independent contractor for the provision of transportation vans.
While appellant has also argued that sovereign immunity does not bar this suit against the County, we do not reach that issue both because the trial court did not rule on that basis and the facts need to be more developed. To begin with, we are unclear as to the basis upon which the transportation services were provided by the County to Rebecca. Chapter 393 provides for the Department of Children and Family Services to develop programs for the developmentally disabled and authorizes the programs and services to be administered through regional districts of the department. See § 393.066(1)-(2), Fla. Stat. (Supp.1998). Those services include transportation. See § 393.066(4)(n), Fla. Stat. (Supp.1998). The statute also requires the department to purchase services, rather than provide them directly through the department, when the purchase of services is more cost-efficient. See § 393.066(3), Fla. Stat. (Supp.1998). Section 393.066(6) specifically requires the department to "utilize the services of private businesses, not-for-profit organizations, and units of local government whenever such services are more cost-efficient than such services provided directly by the department."
In this case, it does not appear that the County has any statutory duty to provide transportation services to the disabled, but we surmise that the County may have bid on a contract with the department to provide such services. This relationship may affect the planning function/operational activity analysis required to determine whether sovereign immunity is waived. See generally Trianon Park Condo. Ass'n, 468 So.2d at 918-19; see also Dep't of Health & Rehab. Servs. v. Yamuni, 529 So.2d 258, 259-60 (Fla.1988). We therefore leave this issue for further development in the trial court.
Reversed and remanded for further proceedings.
DELL and TAYLOR, JJ., concur.