833 So.2d 822 (2002)
Cynthia Jean MOORE a/k/a Cynthia Jean Suarez, Appellant,
v.
DEPARTMENT OF CORRECTIONS, STATE OF FLORIDA, Appellee.
No. 4D02-714.
District Court of Appeal of Florida, Fourth District.
December 4, 2002.
Rehearing Denied January 21, 2003.
*823 Gary Kollin of Gary Kollin, P.A., Fort Lauderdale, for appellant.
Ron Renzy of Wallberg & Renzy, P.A., Coral Springs, for appellee.
PER CURIAM.
Cynthia Moore appeals the dismissal of her claims for negligence and false arrest against the Department of Corrections (DOC). We affirm.
Moore's lawsuit stemmed from the following events. While she was on probation, a DOC officer filed an affidavit saying that she had not paid her probation fees. The trial court issued an arrest warrant for a probation violation. Subsequently, Moore's probation was terminated, but Moore's probation officer did not revoke the outstanding warrant. The DOC probation officer assigned to Moore acknowledged that the probation was terminated; however, this officer was not the same person who filed the earlier affidavit for probation violation. The arrest warrant remained outstanding, and Moore was arrested pursuant to that warrant. At the heart of Moore's case is her contention that DOC had a duty to revoke the outstanding warrant for violation of probation once it received notice that her probation *824 had been terminated. The alleged violation of this duty gave rise to her claims against DOC for negligence and false arrest.
For Moore to have an actionable negligence claim against a government entity, there must be a common law or statutory duty regarding the alleged negligent conduct. See Hinckley v. Palm Beach County Bd. of Comm'rs, 801 So.2d 193, 194-95 (Fla. 4th DCA 2001). Moore alleges that DOC had a common law duty not to subject her to a false arrest.
To analyze government tort liability, the supreme court divided government functions into four categories: I. legislative, permitting, licensing, and executive officer functions; II. enforcement of laws and the protection of the public safety; III. capital improvements and property control operations; and IV. providing professional, educational, and general services for the health and welfare of the citizens. Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 919 (Fla.1985). The supreme court held that there is no duty of care and no corresponding tort liability for discretionary functions within categories I and II. See id. at 919.
Enforcement of public assistance laws to prevent fraud and charges resulting from State Attorney's office investigations have both been classified as discretionary category II functions which carry no duty of care to a particular individual. See Harris v. Kearney, 786 So.2d 1222, 1226 (Fla. 4th DCA 2001); see also State v. Kowalski, 617 So.2d 1099, 1099-1100 (Fla. 5th DCA 1993).
In Harris v. Kearney, Harris omitted a new temporary job from her food stamps application on the advice of a Department of Children and Families (DCF) worker. 786 So.2d at 1223. Similarly to the instant case, a different DCF worker filed an affidavit saying that this omission constituted food stamp fraud, and the lower court issued an arrest warrant on that basis. Harris sued DCF for false arrest. This Court ruled that DCF did not have a duty toward the plaintiff because the government function of enforcing compliance with the food stamp statutes was an example of a Trianon category II discretionary power that did not give rise to a common law duty of care to an individual. See id. at 1226.
Likewise, we hold that probation supervision is also a Trianon category II function involving enforcement of laws and protection of public safety. See 468 So.2d at 919. Probation supervision is a discretionary duty involving the interpretation of existing probation statutes and supervision of probationers to protect the public. It does not give rise to a common law duty of care to individual probationers.
Harris is also instructive on Moore's false arrest claim. "To be liable for false imprisonment, a person must personally and actively participate, directly or indirectly by procurement, in the unlawful restraint of another person against their will.... Merely providing information to the authorities that a violation of law occurred is not sufficient to support an action for false arrest." See Harris, 786 So.2d at 1225. We follow our determination in Harris that the DCF worker's affidavit merely provided information. See id. at 1225-26. The probation officer's action of filing an affidavit that a violation of law has occurred does not give rise to a false arrest claim. See id at 1225-26. Extending this logic, the DOC's failure to withdraw a warrant which was based upon a probation officer's affidavit likewise does not support a false arrest claim.
Under the analysis above, we do not reach the issue that was raised regarding *825 whether DOC is protected by quasi-judicial immunity.
In sum, we affirm the dismissal of Moore's negligence and false arrest claims.
AFFIRMED.
GUNTHER and MAY, JJ., concur.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
If a police officer negligently prepared an arrest warrant naming the wrong person, and that person was arrested and placed in confinement as a result of the negligence of the officer, surely no one would suggest that the innocent person has no civil remedy against the officer. If, instead, the officer belatedly learned of the error after the warrant was already issued and placed in the hands of area police for execution but did nothing to correct the error, surely the officer would equally be liable under the civil remedy. I can see no functional difference between these two hypothetical cases and the present suit. In either instance, the cause of action under our common law tort of false imprisonment is as old as our system of law. Granting a civil remedy in damages is, after all, nothing if not a legal recognition of the essence of liberty.
In her complaint plaintiff alleges both that the warrant never should have been issued in the first placewhich concededly does involve a matter of discretionand also that, after it was issued and the officer learned that her probation had been terminated, the officer did nothing to cancel the warrant. The majority has cited no authority to the effect that the latter allegation specifically is legally insufficient to state a claim of false arrest.
Nor as a jurisprudential matter should it be deemed insufficient. The State of Florida has no proper interest in safeguarding law enforcement officers from such negligence. That is to say, when its officers come to know that an outstanding arrest warrant is no longer legally sustainable as here where probation was terminated and thus revocation was no longer possiblethen its officers should have no proper discretion or law enforcement zeal to maintain such invalid warrants. It may seem a small thing that a former probationer is arrested, even if she thereby lost her job as a result of such negligence. But the law in its perceived majesty either protects the legitimate liberty interests of all its citizens, or its claim to liberty for all is itself false.
I would let plaintiff place her evidence before a jury and let six citizens decide whether there was negligence and, if so, the sum of any damages.