# Third District Court of Appeal

## State of Florida

Opinion filed January 26, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1340
Lower Tribunal No. 18-31703
_____

**Magali Neff, etc., et al.,**
Appellants,

vs.

**Archdiocese of Miami, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Jay M. Levy, P.A., and Jay M. Levy; James J. Traitz, LLC., and James J. Traitz, for appellants.

J. Patrick Fitzgerald & Associates, P.A., and Roberto J. Diaz, and Maura Fitzgerald Jennings; Gaebe, Mullen, Antonelli & DiMatteo, and Emily C. Smith, and Joseph M. Winsby, for appellee Archdiocese of Miami, Inc.

Before LOGUE, LINDSEY, and HENDON, JJ.

LINDSEY, J.

Appellants Michelle, Magalia, and Herbert Neff (Plaintiffs below) appeal from a final judgment entered in favor of Appellee the Archdiocese of Miami, Inc. (Defendant below). Because the Neffs cannot establish a legal duty of reasonable care or a legal duty of supervision, we affirm the trial court's final judgment in favor of the Archdiocese.

## I.      BACKGROUND

The underlying action stems from injuries Michelle Neff, a then-sophomore at St. Brendan High School, sustained while performing community service at the Good Hope Equestrian Training Center. St. Brendan, a private Catholic school within the Archdiocese of Miami, requires its students to perform community service to graduate pursuant to St. Brendan's Community Service Learning Program. St. Brendan provided students with a list of 45 "pre-approved service opportunities." The Program instructions also allowed students to select service opportunities that were not listed.[1]

Michelle selected Good Hope from the list. She alleges that while she was at Good Hope, she was left unsupervised with a horse that reared up and came down on her foot causing an injury. Michelle and her parents,

---

[1] "If there is an organization you are interested in working with that is not included on the list below, you must get **PRIOR AUTHORIZATION** in order to work with them for [Community Service Learning]."

Magali and Herbert, then sued the Archdiocese, St. Brendan, and Good Hope.

The Operative Complaint contains two counts against the Archdiocese. Count V alleges the Archdiocese owes a non-delegable duty to students who attend one of its schools. Count VI alleges the Archdiocese is vicariously liable for St. Brendan's negligence under a theory of apparent agency. Following discovery, the Archdiocese and St. Brendan jointly moved for summary judgment arguing that, as a matter of law, they did not owe a duty to Michelle at the time of the incident because they exerted no authority or control over Good Hope.[2]

Following a hearing, the trial court granted summary judgment in favor of the Archdiocese and St. Brendan concluding, as a matter of law, that

> Plaintiff[']s participation in community service was not school-related, as that term has been defined and applied in the relevant authorities presented by the parties to this Court. The mere creation of a pre-

---

[2] Before the final summary judgment at issue in this appeal, St. Brendan and the Archdiocese moved to dismiss twice. In response to the first motion to dismiss, the Neffs amended their original complaint and added a claim for breach because St. Brendan had expelled Michelle. The Neffs moved for a temporary injunction to reinstate Michelle, which the trial court granted. This Court reversed the injunction. St. Brendan High Sch., Inc. v. Neff, 275 So. 3d 220 (Fla. 3d DCA 2019) ("Neff I"). St. Brendan and the Archdiocese's second motion to dismiss was denied. They then sought a writ of prohibition in this Court based on the ecclesiastical abstention doctrine. This Court denied the petition. St. Brendan High Sch., Inc. v. Neff, 283 So. 3d 399 (Fla. 3d DCA 2019) ("Neff II").

3

approved, non-exclusive list of organizations from which students may or may not choose from to perform required community service to graduate cannot give rise to a legal duty of care on the undisputed facts of record. Further, this does not invoke the undertaker doctrine.

The Neffs timely appealed.[3]

## II. ANALYSIS

The Neffs argue the Archdiocese owed them two distinct legal duties: (1) a duty of reasonable care in compiling a list of service opportunities and (2) a duty of supervision because the required community service was "school sponsored" or "school related." These arguments are addressed in turn.[4]

### 1. The Duty of Reasonable Care

The Neffs argue their case is analogous to <u>Nova Southeastern University, Inc. v. Gross</u>, 758 So. 2d 86 (Fla. 2000) ("<u>Gross II</u>"). In <u>Gross II</u>

---

[3] Because a count is still pending against St. Brendan, final judgment has only been entered in favor of the Archdiocese, the only Defendant who is a party to this appeal.

[4] As an initial matter, the Neffs assert the record contains an issue of fact as to whether students were able to select service opportunities that were not on the pre-approved list. Despite the instructions clearly stating that students were authorized to select unlisted opportunities, Michelle stated in her deposition testimony that in practice, St. Brendan would not approve outside opportunities. Assuming the list was exhaustive, we still conclude that St. Brendan did not exert sufficient control to give rise to a duty of reasonable care or a duty of supervision.

4

the Florida Supreme Court reviewed a decision from the Fourth District that certified the following question:

> WHETHER A UNIVERSITY MAY BE FOUND LIABLE IN TORT WHERE IT ASSIGNS A STUDENT TO AN INTERNSHIP SITE WHICH IT KNOWS TO BE UNREASONABLY DANGEROUS BUT GIVES NO WARNING, OR INADEQUATE WARNING, TO THE STUDENT, AND THE STUDENT IS SUBSEQUENTLY INJURED WHILE PARTICIPATING IN THE INTERSHIP?

Id. at 87.

The Fourth District's opinion in Gross v. Family Services Agency, Inc., 716 So. 2d 337 (Fla. 4th DCA 1998) ("Gross I") involved a graduate student at Nova Southeastern University who was criminally assaulted at an off-campus internship site. According to the factual allegations:

> Nova provides each student with a listing of the approved practicum sites, complete with a description of the type of experience offered at each site. **Each student selects six internships from the list and is placed, by Nova, at one of the selected sites.** Appellant submitted her six selections and was assigned, by Nova, to Family Services Agency, Inc. ("FSA").
>
> FSA is located about fifteen minutes away from Nova. One evening, when leaving FSA, appellant was accosted by a man in the parking lot. She had just started her car when he tapped on her window with a gun. Pointing the weapon at her head, the assailant had appellant roll down the window. Appellant was subsequently abducted from the parking lot, robbed and sexually assaulted. There

5

> was evidence that prior to appellant's attack, Nova had been made aware of a number of other criminal incidents which had occurred at or near the FSA parking lot.

Id. at 338 (emphasis added).

After Gross was assaulted, she sued Nova in tort for breaching a duty of reasonable care. The Fourth District identified two obstacles to Gross's tort action: (1) the injury did not occur on the premises controlled by Nova and (2) the injury was caused by a third party. However, the court concluded that Gross "has stated a cause of action in negligence against Nova based on her allegations that the university assigned her, without adequate warning, to an internship site which it knew was unreasonably dangerous and presented an unreasonable risk of harm." Id. at 340.

The Fourth District certified the above-quoted question, and both parties filed petitions for review. The Florida Supreme Court accepted jurisdiction and approved the Fourth District's decision.

The Supreme Court focused largely on the amount of control exerted by the school, explaining "the extent of the duty a school owes to its students should be limited by the amount of control the school has over the student's conduct." Gross II, 758 So. 2d at 89 (Fla. 2000) (citing Rupp v. Bryant, 417 So. 2d 658, 666–67 (Fla. 1982)). Based on this principle, the Court concluded that Nova, which had the final say in assigning students to

6

locations, assumed a duty of reasonable care because it had control over the students' conduct "by requiring them to do the practicum *and by assigning them to a specific location* . . . ." Id. (emphasis added). Thus, the location to which each student was assigned was ultimately determined *by Nova* from a list of six selected by the student from a larger list.

The Court's analysis also relied on the principle that "one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." Id. (quoting Union Park Memorial Chapel v. Hutt, 670 So.2d 64, 66–67 (Fla.1996)). The act undertaken in this context was Nova's assigning students to a specific location.

The Neffs contend the circumstances here are analogous. Though there are some similarities, we note some key distinctions. Most obvious is the undisputed fact that St. Brendan did not exert nearly the same level of control as Nova. Unlike in Gross, students could choose freely from among the 45 organizations on the Community Service List, and St. Brendan did not have the final say in assigning students to a particular location.[5]

---

[5] Moreover, unlike in Gross, there is no evidence that St. Brendan had any knowledge that Good Hope was an unreasonably dangerous location. Cf. Gross II, 758 So. 2d at 89 ("In a case such as this one, where the university had knowledge that the internship location was unreasonably dangerous, it should be up to the jury to determine whether the university acted reasonably in assigning students to do internships at that location.").

7

To find a legal duty here, this Court would have to expand Gross I and II to apply to situations where the school *does not* have the final say in assigning students to a particular community service location.[6]  Indeed, the Neffs argue that a duty of reasonable care exists simply because St. Brendan compiled a list of pre-approved service opportunities.  But based on existing case law, we agree with the trial court that, as a matter of law, St. Brendan did not owe a duty of reasonable care in this situation.  We decline to extend that duty further than the case law permits.

2. The Duty of Supervision

The Neffs argue that St. Brendan (and by extension the Archdiocese) owed a duty of supervision because the community service was "school-sponsored" or "school related."  In Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi, 30 So. 3d 533, 540 (Fla. 3d DCA 2010), this Court explained that "a school's on-premises duty of supervision may continue when an off-premises activity is 'school sponsored' or 'school related.'"

Here, the community service is not "school sponsored."  There is nothing in the record suggesting that St. Brendan paid for or took

---

[6] We also note that Gross did not involve community service.  As this Court has already recognized, "if schools are to become liable for every incident at an off-premises activity for which community service hours are available, community service will be a thing of the past." Neff I, 275 So. 3d at 223.

8

responsibility for Good Hope. See id. ("The 'sponsor' of an event, according to any dictionary and common usage, is one who pays for it or takes responsibility for it.").

Though "school related" is a broader standard, it too is not satisfied here. As this Court explained in Maynoldi, school related "requires some connection to the school's academic and extracurricular programs." Id. For example, "[a] school athletic team's participation in a scheduled competition at another location is obviously 'school related.' Similarly, a school club's off-premises meeting was held to be school related, subjecting the school to liability for negligence." Id. (citation omitted).

Importantly, this Court further explained that consistent with the examples above, a school's duty of supervision arises from being "school related" when the activity is "officially sponsored by the school and the school had reserved to itself the authority to control the activities . . . ." Id. Here, although community service was required for graduation, there is nothing in the record to indicate Good Hope had any affiliation with St. Brendan or that St. Brendan reserved any control whatsoever over Good Hope. There is also nothing in the record indicating that Good Hope has any connection whatsoever to any club or athletic team at St. Brendan. See Gross I, 716 So. 2d at 339 ("Schools have generally not, however, been held to have a

duty of supervision when the injuries have occurred off-campus while students have been involved in non-school related activities." (citing Concepcion v. Archdiocese of Miami, 693 So. 2d 1103 (Fla. 3d DCA 1997) (holding that a school has no duty to supervise off-campus, non-school related activities during non-school hours); Oglesby v. Seminole Cnty. Bd. of Pub. Instruction, 328 So. 2d 515 (Fla. 4th DCA 1976))).

## III. CONCLUSION

Because the Neffs cannot establish a legal duty of reasonable care or a legal duty of supervision, we affirm the trial court's final judgment in favor of the Archdiocese.

Affirmed.