THOMPSON, Judge.
Greyhound Lines, Inc. (Greyhound) appeals a final order of the Department of Banking & Finance (Department) allowing Greyhound, inter alia, a pro rata refund of 35 percent of the § 323.15(l)(a), Fla.Stat. (1979) road taxes it paid for the 1980 tax year instead of allowing Greyhound a pro rata refund of 100 percent of such road taxes. Greyhound argues it is entitled to a pro rata refund of 100 percent of the § 323.15(l)(a) road taxes it paid for the 1980 tax year instead of a pro rata refund of only that portion of the road tax credited to the Florida Public Service Regulatory Trust Fund. We reverse.
Prior to June 30, 1980, Greyhound operated as a motor carrier throughout the State of Florida and was regulated by the Florida Public Service Commission (PSC) pursuant to Chapter 323, Florida Statutes. Greyhound was required to pay, on or before January 31 of each year, a $100 road tax for each bus engaged in intrastate services and having a capacity of more than 21 passengers. See § 323.15(l)(a), Fla.Stat. For the 1980 tax year Greyhound *163 paid a total of $144,700 in road taxes. Section 323.16, Florida Statutes, required the PSC to keep a separate account of all moneys collected under § 323.15, and required that said moneys be placed in the State Treasury to be credited as follows:
(1) Thirty-five percent of such funds shall be deposited in the Florida Public Service Regulatory Trust Fund, as created by s. 350.78, for use by the commission in the administration of this part.
(2) Two percent of such funds shall be credited to the Revenue Sharing Trust Fund for Municipalities.
(3) The remainder of such fund shall be placed in the State Treasury to the credit of the Revenue Sharing Trust Fund for Counties, subject to distribution as provided in this act.
The 1980 legislature allowed Chapter 323 to “Sunset,” effective July 1, 1980, by failing to reenact this chapter. Greyhound filed a request for a refund of road taxes paid for the 1980 tax year. See § 215.-26(2), Fla.Stat. The Office of the Comptroller of the State of Florida issued a Notice of Intent to Deny Refund. After an administrative hearing, a hearing officer recommended that Greyhound be refunded seven-twelfths, representing the period from July 1, 1980, the date Chapter 323 was effectively repealed, through January 31, 1981, of 35 percent of the road taxes it paid for the 1980 tax year. The Department essentially adopted this recommendation.
Greyhound takes the position that it is entitled to a refund of seven-twelfths of 100 percent of the 1980 road taxes pursuant to § 215.26(1), Fla.Stat., which provides:
The Comptroller of the state may refund to the person who paid same, or his heirs, personal representatives or assigns, any moneys paid into the State Treasury which constitute:
(a) An overpayment of any tax, license or account due;
(b) A payment where no tax, license or account is due; and
(c)Any payment made into the State Treasury in error;
and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds.
The Department argues that by complying with § 323.15 and paying road taxes for the 1980 tax year Greyhound neither made a payment where none was due nor made a payment in error. According to the Department, Greyhound made an overpayment relative to the moneys deposited into the Florida Public Service Regulatory Trust Fund, because these moneys, which were intended to defray the administrative and regulatory costs of enforcing the motor carrier provisions of Chapter 323, were no longer needed by the PSC after repeal of Chapter 323 since the PSC no longer had administrative and regulatory duties under Chapter 323 subsequent to its repeal. However, the Department concludes that Greyhound did not make an overpayment relative to the moneys deposited into the municipal and county trust funds, because these moneys, which were for construction, maintenance, and use of Florida’s public highways for an entire year and which were not related to the PSC’s administrative and enforcement responsibilities under Chapter 323, were not dependent upon the existence of motor carrier regulations during the entire tax year.
The Department’s position that the amount of Greyhound’s refund is dependent on the nature of the funds into which the moneys were placed is not tenable, especially in light of the evidence presented below that the 1980 fourth quarter receipts from the § 323.15 road taxes were not distributed “pending a legal determination regarding motor carrier requests for refunds of fees and taxes for the calendar year 1980.” There was no statutory authority for the imposition of the road tax for the last seven months of the 1980 fiscal year. The language of the refund provision, § 215.26, does not indicate that entitlement *164 to a refund is dependent on the nature of the appropriation to which the payment was credited. Indeed, § 215.26(1) specifically indicates that if an appropriation has been credited with the sum which is to be refunded under that subsection, the appropriation is to be charged with the amount of the refund.
The order of the Department is reversed and the cause is remanded with directions that the Department enter an order allowing Greyhound a pro rata refund of 100 percent of the road taxes it paid for the 1980 tax year.
MILLS and WIGGINTON, JJ., concur.