# Supreme Court of Florida

_____

No. SC13-932
_____

**ABEL LIMONES, SR., et al.,**
Petitioners,

vs.

**SCHOOL DISTRICT OF LEE COUNTY et al.,**
Respondents.

[April 2, 2015]

LEWIS, J.

Petitioners Abel Limones, Sr., and Sanjuana Castillo seek review of the

decision of the Second District Court of Appeal in Limones v. School District of

Lee County, 111 So. 3d 901 (Fla. 2d DCA 2013), asserting that it expressly and

directly conflicts with the decision of this Court in McCain v. Florida Power Corp.,

593 So. 2d 500 (Fla. 1992), and several other Florida decisions.

## BACKGROUND

At approximately 7:40 p.m. on November 13, 2008, fifteen-year-old Abel

Limones, Jr., suddenly collapsed during a high school soccer game. There is no

evidence in the record to suggest that Abel collapsed due to a collision with

another player.  The event involved a soccer game between East Lee County High School, Abel's school, and Riverdale High School, the host school.  Both schools belong to the School District of Lee County.  When Abel was unable to rise, Thomas Busatta, the coach for East Lee County High School, immediately ran onto the field to check his player.  Abel tried to speak to Busatta, but within three minutes of the collapse, he appeared to stop breathing and lost consciousness.  Busatta was unable to detect a pulse.  An administrator from Riverdale High School who called 911, and two parents in the stands who were nurses, joined Busatta on the field.  Busatta and one nurse began to perform cardiopulmonary resuscitation (CPR) on Abel.  Busatta, who was certified in the use of an automated external defibrillator (AED), testified that he yelled for an AED.  The AED in the possession of Riverdale High School was actually at the game facility located at the end of the soccer field, but it was never brought on the field to Busatta to assist in reviving Abel.

Emergency responders from the fire department arrived at approximately 7:50 p.m. and applied their semi-automatic AED to revive Abel, but that was unsuccessful.  Next, responders from the Emergency Medical Service (EMS) arrived and utilized a fully automatic AED on Abel and also administered several drugs in an attempt to restore his heartbeat.  After application of shocks and drugs, emergency responders revived Abel, but not until approximately 8:06 p.m., which

was twenty-six minutes after his initial collapse. Although Abel survived, he suffered a severe brain injury due to a lack of oxygen over the time delay involved. As a result, he now remains in a nearly persistent vegetative state that will require full-time care for the remainder of his life.

Petitioners, Abel's parents, retained an expert, Dr. David Systrom, M.D., who determined that Abel suffered from a previously undetected underlying heart condition. Dr. Systrom further opined that if shocks from an AED had been administered earlier, oxygen would have been restored to Abel's brain sooner and he would not have suffered the brain injury that left him in the current permanent vegetative state. Petitioners then filed an action against Respondent, the School Board of Lee County.[1] They alleged that Respondent breached both a common law duty and a statutory duty as imposed by section 1006.165, Florida Statutes (2008),[2] when it failed to apply an AED on Abel after his collapse. The School Board moved for summary judgment, which the trial court granted and entered final judgment.

_____

1. Petitioners initially filed an action against the School District of Lee County and the School Board of Lee County. All parties conceded that the only proper respondent in this case is the School Board of Lee County.

2. Section 1006.165, Florida Statutes, requires all public schools that participate in the Florida High School Athletic Association to acquire an AED, train personnel in its use, and register its location with the local EMS.

On appeal, the Second District recognized that Respondent owed a duty to supervise its students, which in the context of student athletes included a duty to prevent aggravation of an injury. Limones, 111 So. 3d at 904-05 (citing Rupp v. Bryant, 417 So. 2d 658 (Fla. 1982); Leahy v. Sch. Bd. of Hernando Cnty., 450 So. 2d 883, 885 (Fla. 5th DCA 1984)). However, the Second District proceeded to expand its consideration of the duty owed and enlarged its consideration into a factual scope, extent, and performance of that duty analysis. Id. at 905 (citing Cerny v. Cedar Bluffs Junior/Senior Pub. Sch., 628 N.W.2d 697, 703 (Neb. 2001)). In this analysis, the Second District considered and evaluated whether post-injury efforts in connection with satisfying the duty to Abel should have included making available, diagnosing the need for, or using an AED. Id. The Second District relied on the discussion provided by the Fourth District Court of Appeal in L.A. Fitness International, LLC v. Mayer, 980 So. 2d 550 (Fla. 4th DCA 2008), even though that case did not consider the same "duty" and the health club did not have a duty involving students or any similar relationship.

In L.A. Fitness, the Fourth District considered whether a health club breached its duty of reasonable care owed to a customer who was using training equipment when the health club failed to acquire or use an AED on a customer in cardiac distress. Id. at 556-57. After a review of the common law duties owed by a business owner to its invitees, the Fourth District determined that a health club

- 4 -

owed no duty to provide or use an AED on a patron in cardiac distress.  Id. at 562.

The Second District in Limones found no distinction between L.A. Fitness and the

present case, even though the differences are extreme, and concluded that

reasonably prudent post-injury efforts did not require Respondent to provide,

diagnose the need for, or use an AED.  Limones, 111 So. 3d at 906.  The Second

District also determined that neither the undertaker's doctrine[3] nor section

1006.165, Florida Statutes, imposed a duty to use an AED on Abel.  Id. at 906-07.

Finally, after it concluded that Respondent was immune from civil liability under

section 768.1325(3), Florida Statutes (2008), the Second District affirmed the

decision of the trial court.  Id. at 908-09.  This review follows.

## ANALYSIS

## Jurisdiction

We first consider whether jurisdiction exists to review this matter.

Petitioners assert that the decision below expressly and directly conflicts with the

decision of this Court in McCain and other Florida decisions.  See art. V, § 3(b)(3),

---

3. The undertaker's doctrine imposes a duty of reasonable care upon a party that freely or by contract undertakes to perform a service for another party.  See, e.g., Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1186 (Fla. 2003) (citing Restatement (Second) of Torts § 323 (1965)).  The undertaker is subject to liability if: (a) he or she fails to exercise reasonable care, which results in increased harm to the beneficiary; or (b) the beneficiary relies upon the undertaker and is harmed as a result.  See id.

Fla. Const. Specifically, Petitioners claim that the Second District defined the duty in a manner that conflicts with the approach delineated in McCain. We agree.

We have long held that to succeed on a claim of negligence, a plaintiff must establish the four elements of duty, breach, proximate causation, and damages. See, e.g., U.S. v. Stevens, 994 So. 2d 1062, 1065-66 (Fla. 2008). Of these elements, only the existence of a duty is a legal question because duty is the standard to which the jury compares the conduct of the defendant. McCain, 593 So. 2d at 503. Florida law recognizes the following four sources of duty: (1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case. Id. at 503 n.2. As in this case, when the source of the duty falls within the first three sources, the factual inquiry necessary to establish a duty is limited.[4] The court must simply determine whether a statute, regulation, or the common law imposes a duty of care upon the defendant. The judicial determination of the existence of a duty is a minimal threshold that merely opens the courthouse doors. Id. at 502. Once a court has concluded that a duty exists, Florida law neither requires nor allows the court to further expand its consideration into how a

---

4. Even when the duty is rooted in the fourth prong, factual inquiry into the existence of a duty is limited to whether the "defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." McCain, 593 So. 2d at 502.

reasonably prudent person would or should act under the circumstances as a matter of law.[5] We have clearly stated that the remaining elements of negligence—breach, proximate causation, and damages—are to be resolved by the fact-finder. See Dorsey v. Reider, 139 So. 3d 860, 866 (Fla. 2014); Williams v. Davis, 974 So. 2d 1052, 1056 n.2 (Fla. 2007) (citing McCain, 593 So. 2d at 504); see also Orlando Exec. Park, Inc. v. Robbins, 433 So. 2d 491, 493 (Fla. 1983) ("[I]t is peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care." (citation omitted)), receded from on other grounds by Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 121 (Fla. 1995).

The Second District determined that a clearly recognized common law duty existed under both Rupp and Leahy. Rupp established that school employees must reasonably supervise students during activities that are subject to the control of the school. 417 So. 2d at 666; see also Leahy, 450 So. 2d at 885 (explaining that the duty of supervision owed by a school to its students included a duty to prevent aggravation of an injury). However, the Second District incorrectly expanded Florida law and invaded the province of the jury when it further considered

---

5. Of course, as McCain acknowledges, some facts must be established to determine whether a duty exists, such as the identity of the parties, their relationship, and whether that relationship qualifies as a special relationship recognized by tort law and subject to heightened duties. See 593 So. 2d at 503-04. However, further factual inquiry risks invasion of the province of the jury.

whether post-injury efforts required Respondent to make available, diagnose the need for, or use the AED on Abel. <u>Limones</u>, 111 So. 3d at 905. This detailed analysis exceeded the threshold requirement that this Court established in <u>McCain</u>. Therefore, conflict jurisdiction exists to consider the merits of this case and we choose to exercise our discretion to resolve this conflict. We review de novo rulings on summary judgment with respect to purely legal questions. <u>See, e.g.</u>, <u>Clay Elec. Coop., Inc. v. Johnson</u>, 873 So. 2d 1182, 1185 (Fla. 2003).

**Common Law Duty**

As a general principle, a party does not have a duty to take affirmative action to protect or aid another unless a special relationship exists which creates such a duty. <u>See</u> Restatement (Second) of Torts § 314 cmt. a (1965). When such a relationship exists, the law requires the party to act with reasonable care toward the person in need of protection or aid. <u>See</u> <u>id.</u> § 314a cmt. e. As the Second District acknowledged below, Florida courts have recognized a special relationship between schools and their students based upon the fact that a school functions at least partially in the place of parents during the school day and school-sponsored activities. <u>See, e.g.</u>, <u>Nova Se. Univ., Inc. v. Gross</u>, 758 So. 2d 86, 88-89 (Fla. 2000) (citing <u>Rupp</u>, 417 So. 2d at 666). Mandatory education of children also supports this relationship. <u>Rupp</u>, 417 So. 2d at 666.

- 8 -

This special relationship requires a school to reasonably supervise its students during all activities that are subject to the control of the school, even if the activities occur beyond the boundaries of the school or involve adult students. See Nova Se. Univ., 758 So. 2d at 88-89 (applying the in loco parentis doctrine to a relationship between an adult student and a university when the university mandated participation by the student in an off-campus internship); Rupp, 417 So. 2d at 666-67 (concluding that a duty of supervision existed during an unsanctioned off-campus hazing event by a school-sponsored club); cf. Kazanjian v. Sch. Bd. of Palm Beach Cnty., 967 So. 2d 259, 268 (Fla. 4th DCA 2007) (finding that the duty of supervision did not extend to a student who was injured when she left school premises without authorization). This duty to supervise requires teachers and other applicable school employees to act with reasonable care under the circumstances. Wyke v. Polk Cnty. Sch. Bd., 129 F.3d 560, 571 (11th Cir. 1997) (citing Florida law); see also Nova Se. Univ., 758 So. 2d at 90 (noting that the university had a duty to use reasonable care when it assigned students to off-campus internships). Thereafter, it is for the jury to determine whether, under the relevant circumstances, the school employee has acted unreasonably and, therefore, breached the duty owed. See La Petite Acad., Inc. v. Nassef ex rel. Knippel, 674 So. 2d 181, 182 (Fla. 2d DCA 1996) (citing Benton v. Sch. Bd. of Broward Cnty., 386 So. 2d 831, 834 (Fla. 4th DCA 1980)); see also Zalkin v. Am. Learning Sys.,

639 So. 2d 1020, 1021 (Fla. 3d DCA 1994) (concluding that whether alleged negligent supervision by school employees resulted in injury to a student was a jury issue).

Lower courts in Florida have recognized that the duty of supervision creates the following specific duties owed to student athletes: (1) schools must adequately instruct student athletes; (2) schools must provide proper equipment; (3) schools must reasonably match participants; (4) schools must adequately supervise athletic events; and (5) schools must take appropriate measures after a student is injured to prevent aggravation of the injury. See Limones, 111 So. 3d at 904 (citing Leahy, 450 So. 2d at 885); see also Zalkin, 639 So. 2d at 1021. Other jurisdictions have acknowledged similar duties owed to student athletes. See Avila v. Citrus Cmty. Coll. Dist., 131 P.3d 383, 392 (Cal. 2006) ("[I]n interscholastic and intercollegiate competition, the host school and its agents owe a duty to home and visiting players alike to, at a minimum, not increase the risks inherent in the sport."); Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1370 (3d Cir. 1993) (college owed duty to recruited athlete to take reasonable safety precautions against the risk of death); see also Jarreau v. Orleans Parrish Sch. Bd., 600 So. 2d 1389, 1393 (La. Ct. App. 1992) (school board owed duty to injured high school athlete to provide access to medical treatment); Stineman v. Fontbonne Coll., 664 F.2d 1082, 1086 (8th Cir. 1981) (college owed duty to provide medical assistance to injured student athlete).

In this case, Abel was a student who was injured while he participated in a school-sponsored soccer game under the supervision of school officials. Therefore, we conclude that Respondent owed Abel a duty of supervision and to act with reasonable care under the circumstances; specifically, Respondent owed Abel a duty to take appropriate post-injury efforts to avoid or mitigate further aggravation of his injury. See Rupp, 417 So. 2d at 666; Leahy, 450 So. 2d at 885. "Reasonable care under the circumstances" is a standard that may fluctuate with time, the student's age and activity, the extent of the injury, the available responder(s), and other facts. Advancements with technology and equipment available today, such as a portable AED, to treat an injury were most probably unavailable twenty years ago, and may be obsolete twenty years from now. We therefore leave it to the jury to determine, under the evidence presented, whether the particular actions of Respondent's employees satisfied or breached the duty of reasonable care owed.

For several reasons, we reject the decision of the Second District to narrowly frame the issue as whether Respondent had a specified duty to diagnose the need for or use an AED on Abel. First, as stated above, reasonable care under the circumstances is not and should not be a fixed concept. Such a narrow definition of duty, a purely legal question, slides too easily into breach, a factual matter for the jury. See McCain, 593 So. 2d at 502-04. We reject the attempt below to

- 11 -

specifically define each element in the scope of the duty as a matter of law, as this case attempted to remove all factual elements from the law and digitalize every aspect of human conduct. We are also cognizant of the concern raised by Respondent and its amici that if a defined duty could require every high school to provide an AED at every athletic practice and contest, the result could be great expense. Instead, the flexible nature of reasonable care delineated here can be evaluated on a case by case basis. The duty does not change with regard to using reasonable care to supervise and assist students, but the methods and means of fulfilling that duty will depend on the circumstances.

Additionally, we reject the position of the Second District and Respondent that L.A. Fitness governs this case. The Fourth District in L.A. Fitness determined that the duty owed by a commercial health club to an adult customer only required employees of the club to reasonably summon emergency responders for a patron in cardiac distress. 980 So. 2d at 562; see also De La Flor v. Ritz-Carlton Hotel Co., 930 F. Supp. 2d 1325, 1330 (S.D. Fla. 2013) (citing L.A. Fitness, 980 So. 2d at 562). The adult customer and the health club stand in a far different relationship than a student involved in school activities with school board officials. Although some courts in other jurisdictions have determined that fitness clubs and other

commercial entities do not owe a legal duty to provide AEDs to adult customers,[6] the commercial context and relationship of parties in these cases is a critical distinction from the case before us. Despite the fact the business proprietor-customer and school district-student relationships are both recognized as relationships, these relationships are markedly different. We initially note that the proprietor-customer relationship most frequently involves two adult parties, whereas the school-student relationship usually involves a minor. Furthermore, the business invitee freely enters into a commercial relationship with the proprietor.

By contrast, Florida, along with the rest of the country, has mandated education of our minor children. § 1003.21, Fla. Stat. (2014). Compulsory schooling creates a unique relationship, a fact that has been recognized both by Florida courts and the Florida Legislature. Florida common law recognizes a specific duty of supervision owed to students and a duty to aid students that is not

---

6. See, e.g., Verdugo v. Target Corp., 327 P.3d 774, 792 (Cal. 2014) (holding that a retailer did not owe a common law duty to acquire and make available an AED to a patron); Miglino v. Bally Total Fitness of Greater N.Y., Inc., 985 N.E.2d 128, 132 (N.Y. 2013) (statute that required large health clubs to acquire an AED did not impose duty to use it); Rotolo v. San Jose Sports & Entm't, LLC, 59 Cal. Rptr. 3d 770, 774-75 (Cal. Ct. App. 2007) (refusing to impose a duty on owners of a sports facility to notify patrons of the existence and location of an AED), modified on other grounds by Verdugo, 327 P.3d at 784; Salte v. YMCA of Metro. Chi. Found., 814 N.E.2d 610, 615 (Ill. App. Ct. 2004) (holding that a health club's duty of reasonable care to its guests did not require it to obtain and use an AED on a guest).

otherwise owed to the business customer.  See Rupp, 417 So. 2d at 666-67.

Furthermore, the Florida Legislature has specifically mandated that high schools

that participate in interscholastic athletics acquire an AED and train appropriate

personnel in its use.  § 1006.165(1)-(2), Fla. Stat.  Notably, the Legislature has not

so regulated health clubs or other commercial facilities, even though the

foreseeability for the need to use an AED may be similar in both contexts.  See

L.A. Fitness, 980 So. 2d at 561.  The relationship between a commercial entity and

its patron quite simply cannot be compared to that between a school and its

students.  We therefore conclude that the facts of this case are not comparable to

those in L.A. Fitness.

### Other Sources of Duty

Although Petitioners alleged in their pleadings that Respondent owed a

statutory duty under section 1006.165, Florida Statutes, Petitioners did not clearly

articulate before this Court the basis for such a duty.  We therefore do not address

it here.  See, e.g., Chamberlain v. State, 881 So. 2d 1087, 1103 (Fla. 2004).

Moreover, because we decide as a dispositive issue that Respondent's motion for

summary judgment was improperly granted because Respondent owed a common

law duty to Abel, we decline to address Petitioners' claim under the undertaker's

doctrine.

### Immunity

- 14 -

Because we conclude that Respondent owed a common law duty to Abel, we must now consider whether Respondent is immune from suit under sections 1006.165 and 768.1325, Florida Statutes.  See Wallace v. Dean, 3 So. 3d 1035, 1044 (Fla. 2009) (emphasizing that the existence of a duty is "conceptually distinct" from the determination of whether a party is entitled to immunity).  Respondent claims that these statutory provisions grant it immunity.  The question of statutory immunity is a legal question that we review de novo.  See, e.g., Found. Health v. Westside EKG Assocs., 944 So. 2d 188, 193-94 (Fla. 2006).

Section 1006.165 requires all public schools that are members of the Florida High School Athletic Association to have an operational AED on school property and to train "all employees or volunteers who are reasonably expected to use the device" in its application.  § 1006.165(1)-(2), Fla. Stat.  Further, "[t]he use of [AEDs] by employees and volunteers is covered under [sections] 768.13 and 768.1325," which generally regulate immunity under Florida's Good Samaritan Act and the Cardiac Arrest Survival Act.  § 1006.165(4).[7]  Subsection (3) of the Cardiac Arrest Survival Act states:

---

7. Although section 1006.165 references both the Good Samaritan Act, section 768.13, and the Cardiac Arrest Survival Act, section 768.1325, Respondent seeks immunity only under the Cardiac Arrest Survival Act.  We therefore do not consider whether the Good Samaritan Act provides immunity under these circumstances.  See, e.g., Chamberlain, 881 So. 2d at 1103.

- 15 -

> Notwithstanding any other provision of law to the contrary, and except as provided in subsection (4), <u>any person who uses or attempts to use an [AED] on a victim of a perceived medical emergency, without objection of the victim of the perceived medical emergency, is immune from civil liability for any harm resulting from the use or attempted use of such device</u>. In addition, notwithstanding any other provision of law to the contrary, and except as provided in subsection (4), any person who acquired the device and makes it available for use, including, but not limited to, a community organization . . . is immune from <u>such liability</u> . . . .

§ 768.1325(3), Fla. Stat. (emphasis supplied).  There is no immunity for criminal misuse, gross negligence, or similarly egregious misuse of an AED.  § 768.1325(4)(a).

Under a plain reading of the statute, this subsection creates two classes of parties that may be immune from liability arising from the misuse of AEDs: users (actual or attempted), and acquirers.  Users are clearly "immune from civil liability for any harm resulting from the use or attempted use" of an AED.  § 768.1325(3), Fla. Stat.  Additionally, acquirers are immune from "such liability," meaning the "liability for any harm resulting from the <u>use or attempted use</u>" referenced in the prior sentence.  <u>Id.</u> (emphasis supplied).  Thus, acquirers are not immune due to the mere fact that they have purchased and made available an AED which has <u>not</u> been used; rather, they are entitled to immunity from the harm that may result only when an AED is <u>actually used or attempted to be used</u>.  It is undisputed that no actual or attempted use of an AED occurred in this case until emergency responders arrived.

Therefore, we hold that Respondent is not entitled to immunity under section 768.1325 and such section has absolutely no application here.

Despite the protests of Respondent and its amici, we do not believe that this straightforward reading of the statute defeats the legislative intent. The passage of section 1006.165 demonstrates that the Legislature was clearly concerned about the risk of cardiac arrest among high school athletes. The Legislature also explicitly linked this statute to the Cardiac Arrest Survival Act, which grants immunity for the use—actual or attempted—of an AED. The emphasis on the use or attempted use of an AED in the statute underscores the intent of the Legislature to encourage bystanders to use a potentially life-saving AED when appropriate. Without this grant of immunity, bystanders would arguably be more likely to hesitate to use an AED for fear of potential liability. To extend the shield of immunity to those who make no attempt to use an AED would defeat the intended purpose of the statute and discourage the use of AEDs in emergency situations. The argument that immunity applies when an AED is not used is spurious. The immunity is with regard to harm caused by the use of an AED, not a failure to otherwise use reasonable care.

**CONCLUSION**

We hold that Respondent owed a common law duty to supervise Abel, and that once injured, Respondent owed a duty to take reasonable measures and come

to his aid to prevent aggravation of his injury. It is a matter for the jury to determine under the evidence whether Respondent's actions breached that duty and resulted in the damage that Abel suffered. We further hold Respondent is not entitled to immunity from suit under section 768.1325, Florida Statutes. We therefore quash the decision below and remand this case for trial.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I conclude that the decision of the district court of appeal, Limones v. School District of Lee County, 111 So. 3d 901 (Fla. 2d DCA 2013), does not expressly and directly conflict with McCain v. Florida Power Corp., 593 So. 2d 500 (Fla. 1992), I would dismiss review of this case for lack of jurisdiction under article V, section 3(b)(3), of the Florida Constitution. I therefore dissent.

In McCain, the plaintiff was injured when the blade of a trencher he was operating made contact with an underground electrical cable owned by Florida Power Corporation. The Court held that because cables transmitting electricity had "unquestioned power to kill or maim," the defendant had created a "foreseeable zone of risk" and therefore, as a matter of law, had a duty to take reasonable

precautions to prevent injury to others. McCain, 593 So. 2d at 503-04. In Limones, the district court of appeal held as a matter of law that a school district "had no common law duty to make available, diagnose the need for, or use" an automated external defibrillator on a student athlete who "collapsed on the field . . . stopped breathing and had no discernible pulse" during a high school soccer match. Limones, 111 So. 3d at 903, 906. The two decisions are clearly distinguishable based on their totally different facts. Therefore, there is no express and direct conflict and we lack jurisdiction to review the district court's decision.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

     Second District - Case No. 2D11-5191

     (Lee County)

David Charles Rash of David C. Rash, P.A., Weston, Florida, and Elizabeth Koebel Russo of Russo Appellate Firm, P.A., Miami, Florida,

     for Petitioners

Traci McKee of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, Florida, and Scott Andrew Beatty of Henderson, Franklin, Starnes & Holt, P.A., Bonita Springs, Florida,

     for Respondents

Jennifer Suzanne Blohm and Ronald Gustav Meyer of Meyer, Brooks, Demma and Blohm, P.A., Tallahassee, Florida,

     for Amicus Curiae Florida School Boards Association, Inc.

Leonard E. Ireland, Jr., Gainesville, Florida,

    for Amicus Curiae Florida High School Athletic Association, Inc.

Mark Miller and Christina Marie Martin, Pacific Legal Foundation, Palm Beach Gardens, Florida,

    for Amicus Curiae Pacific Legal Foundation