# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-4509

_____

CHRISTINA DALY, in her official
capacity as Secretary of the
Florida Department of Juvenile
Justice,

     Appellant,

     v.

MARION COUNTY, FLORIDA, POLK
COUNTY, FLORIDA, and
SEMINOLE COUNTY, FLORIDA,
political subdivisions of the
State of Florida,

     Appellees.

_____

On appeal from the Circuit Court for Leon County.
John C. Cooper, Judge.

November 27, 2018

B.L. THOMAS, C.J.

Before us is the culmination of a series of cases regarding juvenile-detention funding under section 985.686, Florida Statutes. Appellant, Christina Daly, in her official capacity as Secretary of the Florida Department of Juvenile Justice, appeals the trial court's order granting final summary judgment to

Appellees, Polk County and Seminole County,[1] and ordering the Department to pay refunds to Appellees for overpayments into the "Shared County/State Juvenile Detention Trust Fund." For the reasons set forth below, we affirm.

*Background*

Under section 985.686(1), Florida Statutes, "the state and the counties have a joint obligation" to fund juvenile detention care. During the fiscal years in question, the legislature divided this joint obligation according to disposition date, with each participating county having to pay the costs of detention care for any juvenile residing in that county "for the period of time prior to final court disposition." § 985.686(3), Fla. Stat.

At the beginning of each fiscal year, the Department was required to estimate each county's predisposition costs for the upcoming year and bill that county monthly based on that estimate.[2] § 985.686(5), Fla. Stat. At the end of the fiscal year, the Department was required to reconcile the monies paid by each county throughout the year with that county's actual costs. *Id.* Pursuant to its rules implementing this requirement, the Department assigned credits toward future payments when counties overpaid, and assigned debits when counties underpaid.

All funds provided by the counties were deposited into the Shared Trust Fund, which the legislature created as a "depository for funds to be used for the costs of juvenile detention." § 985.6015(2), Fla. Stat. The only monies deposited into this Shared Trust Fund were supplied by the counties to prepay their obligations, and general revenue funds to cover the costs of fiscally constrained counties.

---

[1] The order also awarded relief to Marion County, who is no longer a party to this case.

[2] "Fiscally constrained" counties are subject to certain exemptions. As Appellees were not fiscally constrained, those exemptions and rules are not pertinent here.

2

The Department initially interpreted section 985.686 to require the counties to pay all detention costs incurred before the date of the juvenile's commitment to the Department, as opposed to the date of the court's disposition of the juvenile's case, which often occurs days before commitment. *See Dep't of Juvenile Justice v. Okaloosa Cty.*, 113 So. 3d 1074 (Fla. 1st DCA 2013) (Mem). In 2010, several counties challenged the Department's rules codifying this interpretation, arguing that the rules forced the counties to pay for thousands of days that were the State's responsibility. *Id.* On appeal, this court agreed with the counties, holding that the plain meaning of section 985.686 did not support the Department's interpretation. *Id.*

The Department then issued a final order denying any obligation to repay the counties. Pinellas and Broward Counties, both of whom had overpaid on account of the Department's invalidated rules, appealed that final order, and we remanded for the Department to apply credits over time until the total credit was applied. *Pinellas Cty. v. Florida Dep't of Juvenile Justice*, 188 So. 3d 894 (Fla. 1st DCA 2016); *Broward Cty. v. State, Dep't of Juvenile Justice*, 192 So. 3d 70 (Fla. 1st DCA 2016) (Mem).

Unlike Pinellas and Broward Counties, who could be remedied with credits toward future prepayments, Appellees opted out of the cost-sharing system sometime after the years of overpayment, as permitted by section 985.686(10), Florida Statutes. The Department denied any obligation to issue refunds to these counties. In *Marion County v. Department of Juvenile Justice*, this Court held that the Department has a duty to reconcile differences between initial estimates and actual costs, and that honoring that obligation can require reimbursing counties for overpayments when credits are not an appropriate remedy. 215 So. 3d 621, 628 (Fla. 1st DCA 2017).

In 2014, Polk County filed a refund application under section 215.26, Florida Statutes, the tax refund statute, which states:

> (1)  The Chief Financial Officer may refund to the person who    paid    same,    or    his    or    her    heirs,    personal

representatives, or assigns, any moneys paid into the State Treasury which constitute:

(a)  An overpayment of any tax, license, or account due;
(b)  A payment where no tax, license, or account is due; and
(c)  Any payment made into the State Treasury in error;

and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. *There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds.*

§ 215.26(1), Fla. Stat. (emphasis added).  The Department denied Polk County's refund application, asserting that counties are not "persons" under section 215.26.  Polk County then brought an action against the Department and its Chief Financial Officer, as permitted by Rule 69I-44.020(3)(b), Florida Administrative Code. Seminole County filed a similar application.

The Department asserted that it could not issue refunds, as the Shared Trust Fund consisted of subaccounts, and Appellees' subaccounts were empty.  Appellees presented the deposition testimony of the Department's Chief of Staff, who testified as follows:

Q:  Do you keep track of when expenditures are made from the shared trust fund, how much of the money deposited by Charlotte County goes toward individual expenditures?

A:  No.

Q:  So when bills are coming – when bills come into the department to be paid, how does the department determine which fund within the department those bills are paid out of?

A:  It's paid out of general revenue and the shared county trust fund.

4

. . . .

    Q:    And if a payment is issued from the shared county trust fund, that's not related to a particular county's revenue; is that correct?

    A:    No, no, no.

When asked if the Department kept documents showing county-specific accounts within the Shared Trust Fund, the Chief of Staff replied, "They're accounted against the shared county trust fund in total, not by county." He further testified:

    Q:    Does the department maintain any records that would allow it to determine what Charlotte County's balance is within the trust account on that particular date?

    A:    No.

    Q:    And that's, again, because the expenditures are not tracked against what Charlotte County pays into the trust fund; is that correct?

    A:    That's correct, that's correct.

The Chief of Staff also testified that when the Department issued refunds to counties in the past, it only assessed whether the Shared Trust Fund as a whole had sufficient cash for refunds.

The trial court concluded that the evidence "unequivocally demonstrates that the Department does not maintain subaccounts, and . . . is unable to attribute funds remaining in the Shared Trust Fund to an individual county." The court also found that the Shared Trust Fund has held funds in excess of $15 million at the end of each recent fiscal year, and that the Department had issued refunds in the past under section 215.26, Florida Statutes. The court granted final summary judgment to Appellees and ordered the Department to issue refunds in the amounts overpaid.

5

*Analysis*

## I. *Judicial Authority to Order the Refund*

A trial court's ruling on a motion for summary judgment posing a pure question of law is reviewed *de novo.* *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001).

Section 985.686, Florida Statutes, declares that "the state and the counties have a joint obligation . . . to contribute to the financial support of the detention care provided for juveniles." § 985.686(1), Fla. Stat. The statute provides that "[a]ny difference between the estimated costs and actual costs shall be reconciled at the end of the state fiscal year." § 985.686(5), Fla. Stat. In *Marion County*, we held that this language requires "more than a reconciliation on paper." *Marion Cty.* 215 So. 3d at 628. "The fact that the Department's rules only provide for a forwarding credit does not delete the statutory requirements that counties are only responsible for actual costs and the Department has a mandatory duty to reconcile overpayments." *Id.*

Although section 985.686 creates a statutory duty to remedy overpayments, it contains no appropriation language indicating a source of monies for refunds. *See* § 985.686(1), Fla. Stat.; *see also* § 216.011(1)(b), Fla. Stat. (defining an appropriation as "a legal authorization to make expenditures for specific purposes within the amounts authorized by law"); *State ex rel. Victor Chem. Works v. Gay,* 74 So. 2d 560, 562 (Fla. 1954) ("unless there is some statute which authorizes a refund or the filing of a claim for refund, money cannot be refunded or recovered once it has been paid although levied under the authority of an unconstitutional statute"). Appellees must therefore rely on section 215.26, Florida Statutes, to obtain a refund for overpayments made into the State Treasury.

Appellant acknowledges that section 215.26 provides appropriations to pay refunds, and admits that the statute is a proper vehicle for tax overpayments, but argues that the statute affords no relief here, as the overpayments at issue were deposited into a trust fund. Appellant argues that the matter is therefore subject to the constraints of section 215.32, Florida Statutes. *Cf. McKendry v. State*, 641 So. 2d 45, 46-47 (Fla. 1994) (holding that a

6

specific statute on a subject controls over a general statute covering that subject and others). Section 215.32 states:

> Upon the request of the state agency or branch of state government responsible for the administration of the trust fund, the Chief Financial Officer may establish accounts within the trust fund at a level considered necessary for proper accountability. Once an account is established, the Chief Financial Officer may authorize payment from that account only upon determining that there is sufficient cash and releases *at the level of the account*.

§ 215.32(2)(b)1., Fla. Stat. (emphasis added).

We do not agree that section 215.32 negates section 215.26 where a trust fund is involved, as Florida courts have frequently allowed refunds from trust funds pursuant to section 215.26. *See, e.g.*, *Sarnoff v. Florida Dep't of Hwy. Safety & Motor Vehicles*, 825 So. 2d 351, 357 (Fla. 2002) (approving this Court's holding that section 215.26 provides a mechanism to refund overpayments into the Highway Safety Operating Trust Fund); *Amerisure Mut. Ins. Co. v. Florida Dep't of Fin. Servs., Div. of Workers' Compensation*, 156 So. 3d 520, 528 (Fla. 1st DCA 2015) (recognizing that a refund claim for overpayment into the Special Disability Trust Fund "falls squarely within the ambit of Section 215.26, Florida Statutes"); *Greyhound Lines, Inc. v. Dep't of Banking & Fin.*, 443 So. 2d 162, 163 (Fla. 1st DCA 1983) (holding that a claimant was entitled to a refund for overpayments into the Florida Public Service Regulatory Trust Fund).

It is undisputed that the Shared Trust Fund has sufficient cash for refunds, but Appellant argues that there is no money at the level of Appellees' accounts within the Shared Trust Fund to pay the refund. However, the testimony of the Department's Chief of Staff confirmed that the Department makes expenditures from the Shared Trust Fund without regard as to whether the monies were provided by individual counties. When the Department issued refunds in the past, it looked only at whether the Shared Trust Fund as a whole had sufficient cash. Appellant presented no evidence showing that the Department ever requested the Chief

7

Financial Officer to create subaccounts within the Shared Trust Fund, or that the Chief Financial Officer ever established accounts at a level smaller than the whole fund. *See* § 215.32(2)(b)1., Fla. Stat. ("Upon the request of the state agency . . . , the Chief Financial Officer may establish accounts within the trust fund at a level considered necessary for proper accountability.").

Appellant instead makes a logical assertion that the Shared Trust Fund must contain subaccounts, even if no evidence of such exists, as individual accounts would be necessary for the required reconciliation of costs. We need not discuss why the reconciliation process does not necessarily require subaccounts, as relevant testimony refutes the existence of any subaccounts here. *See Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.*, 109 So. 3d 329, 335 (Fla. 4th DCA 2013) (holding that a corporation may not retract its representative's testimony with impunity under Fla. R. Civ. P. 1.310(1)(6)); *Cary v. Keene Corp.*, 472 So. 2d 851, 853 (Fla. 1st DCA 1985) (stating general rule that a party "may not repudiate or contradict by affidavit his previous deposition testimony" and noting exception)). Thus, even if Appellant is correct that section 215.32 limits claims brought under section 215.26 when there is insufficient cash at the level of the account, the summary judgment evidence here demonstrates that the proper account level is the Shared Trust Fund as a whole, which has sufficient cash to pay refunds. Thus, we hold that section 215.32 places no constraints here, and that the trial court did not err in ordering refunds under section 215.26, Florida Statutes.

## II.   *Separation of Powers*

Next, Appellant argues that the trial court interfered with the legislature's exclusive power over appropriations. The judicial branch "must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." *Florida Dep't of Children & Families v. J.B.*, 154 So. 3d 479, 481 (Fla. 3d DCA 2015) (quoting *Detournay v. City of Coral Gables*, 127 So. 3d 869, 873 (Fla. 3d DCA 2013)). A court interferes with the legislative branch where it "requir[es] funds to be spent by an executive agency *in a manner not authorized by statute*," or "interfere[s] with an executive

8

agency's discretion in the spending of appropriated funds." *Id.* (emphasis in original) (quoting *Dep't of Children & Families v. K.R.*, 946 So. 2d 106, 107-08 (Fla. 5th DCA 2007)).

Although the judiciary may not instruct an agency to exercise its *discretionary* spending, a court has authority to order an agency to comply with a legislative mandate requiring funds to be spent in a particular way. *See State ex rel. C.P.O. Mess (Open), U.S. Naval Station, Key West v. Green*, 174 So. 2d 546, 550 (Fla. 1965); *J.B.*, 154 So. 3d at 481; *State Dep't of Highway Safety & Motor Vehicles v. Rendon*, 957 So. 2d 647, 652 (Fla. 3d DCA 2007) (affirming a grant of refund under section 215.26, but remanding to determine which taxpayers qualify for the remedy). Otherwise, there could be no remedy if a state agency refused to comply with the legislature's authority to appropriate funds for a specific purpose.

Appellant cites *In re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender*, 561 So. 2d 1130, 1136 (Fla. 1990), for the proposition that the judiciary cannot compel the State to provide reimbursements. That case involved a dispute over costs paid by Florida counties for court-appointed conflict counsel. *Id.* In *Order on Prosecution*, however, the supreme court held that the legislature intended for the *counties* to pay the disputed costs, and that the State therefore had no statutory obligation to reimburse those expenses. *Id.* at 1137. Noting that it lacked authority to order the State to pay more than its statutory obligations, the supreme court could only "strongly recommend that the legislature . . . provide sufficient funds to reimburse the counties . . . ." *Id.* at 1138.

Here, by contrast, it was the State, not the counties, who bore the statutory obligation to pay post-disposition costs, a portion of which the counties paid in error. *Marion Cty.*, 215 So. 3d at 627; *Pinellas Cty.*, 188 So. 3d at 896. Section 985.686 imposes upon the Department a mandatory duty to reimburse the counties in the amount of their overpayment. *Marion Cty.*, 215 So. 3d at 628. Accordingly, the trial court's order did not violate the separation of powers, because the order enforces a legislative mandate.

### III. Sovereign Immunity

9

In Florida, sovereign immunity generally bars any unconsented action against the State for damages. *Rendon*, 957 So. 2d at 652. "The immunity of the State of Florida and its agencies from liability for claims arising under Florida law or common law is absolute absent a clear, specific, and unequivocal waiver by legislative enactment." *State, Dep't of Elder Affairs v. Caldwell*, 199 So. 3d 1107, 1109 (Fla. 1st DCA 2016). Whether a legislative enactment waives sovereign immunity is a pure question of law, reviewed *de novo. Id.* at 1109.

Because section 215.26, Florida Statutes, specifically allows plaintiffs to obtain refunds from the State, sovereign immunity does not bar section 215.26 actions, as "the State has consented to be sued, and the immunity has been waived." *Rendon*, 957 So. 2d at 652; *see also McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Bus. Reg. of Fla.*, 496 U.S. 18, 49 n.34 (1990) (acknowledging that Florida waived immunity to suits brought under section 215.26).

Appellant argues that although section 215.26 consents to lawsuits from taxpayers, the statute does not waive immunity to lawsuits by the State's own political subdivisions. Section 215.26 allows refunds to be issued "to the person who paid same." § 215.26(1), Fla. Stat. Chapter 215 does not define what constitutes a "person." Section 1.01(3), Florida Statutes, which establishes how Florida Statutes must be generally construed, defines person to include "individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and *all other groups or combinations*." § 1.01(3), Fla. Stat. (emphasis added). Courts have interpreted government entities as "persons" under section 1.01. *See Green*, 174 So. 2d 546 (holding that a federal government entity was entitled to a refund under section 215.26); *Limones v. School Dist. of Lee Cty.*, 111 So. 3d 901, 908 (Fla. 2d DCA 2013) ("conclud[ing] that the School Board qualifies as a 'person' under [the Cardiac Arrest Survival Act]"), *rev'd on other grounds*, 161 So. 3d 384 (Fla. 2015).

Because section 1.01(3) declares that "all other groups or combinations" are "person[s]," and because section 215.26 allows

refund lawsuits from persons who overpaid into the State Treasury, we interpret these statutes as waiving immunity to section 215.26 lawsuits brought by Florida counties. *Cf. Klonis v. State Dep't of Revenue*, 766 So. 2d 1186, 1190 (Fla. 1st DCA 2000) (holding that separate statutory provisions, "taken together, clearly demonstrate a legislative intent to allow suits against the State of Florida and any of its agencies"). Accordingly, sovereign immunity does not bar relief.

For the foregoing reasons, the trial court's order granting final summary judgment to Appellees and ordering the Department to issue refunds in the amounts overpaid is hereby affirmed.

WINOKUR, J., and KETCHEL, TERRANCE R., Associate Judge, concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Pamela Jo Bondi, Attorney General, Blaine H. Winship, Special Counsel, and William H. Stafford, III, Senior Assistant Attorney General, Tallahassee, for Appellants.

Gregory T. Stewart, Carly J. Schrader and Heath R. Stokley of Nabors, Giblin & Nickerson, P.A., Tallahassee, for Appellees Polk County and Seminole County.

Arthur Bryant Applegate, County Attorney, and Lynn P. Porter-Carlton, Deputy County Attorney, Sanford, for Appellee Seminole County.